# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

DYNAMIC MOTION RIDES GMBH;
and DYNAMIC MOTION GROUP
GMBH,

    Plaintiffs,

v.                                                Case No. 6:21-cv-752-RBD-LHP

UNIVERSAL CITY DEVELOPMENT
PARTNERS LTD; UNIVERSAL CITY
STUDIOS LLC; and UNIVERSAL
STUDIOS, LLC,

    Defendants.
_____

## ORDER

Before the Court are Defendants Universal City Development Partners Ltd., Universal City Studios LLC, and Universal Studios, LLC's (collectively, "Universal") motion for summary judgment (Doc. 110), Plaintiffs Dynamic Motion Rides GMBH and Dynamic Motion Group GMBH's (collectively, "Plaintiffs" or "Dynamic") motion for partial summary judgment (Doc. 118), and the parties' motions to exclude expert testimony (Docs. 109, 111, 119, 120).

## BACKGROUND

Universal owns and operates a theme park. (Doc. 63, ¶ 2.) In 2013, Universal entered into a contract with Dynamic Motion Rides GMBH ("Designer") to design

and build a new ride—Jimmy Fallon's Race Through New York ("Attraction"). (*Id.* ¶ 1.) An affiliate of the Designer, Dynamic Motion Group GMBH ("Inventor"), provided the intellectual property ("IP") for the Attraction.[1]

Universal and the Designer's relationship is governed by the Master Purchase Agreement ("MPA").[2] (Doc. 63-1.) The Inventor is not a signatory to the MPA, though the Inventor's IP is referenced. (*Id.*)

The MPA functioned through piecemeal work authorizations: Universal requested certain portions of work from the Designer and then paid the Designer for that portion of work once it was completed. (*Id.* at 11.) As portions of the work used the Inventor's IP, the MPA provided Universal would be granted a "perpetual, irrevocable, transferable" license to use that IP "without any cost beyond the payments otherwise required" by the MPA or the applicable work authorization. (*Id.* at 51.)

Toward the beginning of the parties' relationship, the work authorizations focused on the conceptual design of the Attraction; later work authorizations (via scope change orders) tasked the Designer with beginning to build the Attraction. (Docs. 63-2, 63-3.) In 2014, the relationship went south as the parties disagreed on

---

[1] Confusingly, though Plaintiffs' representative testified that the Inventor is the sole owner of the patents (Doc. 108-2, pp. 92:23–93:6), Plaintiffs also refer to themselves collectively as having rights to the IP, including patents. (*See, e.g.*, Doc. 63, ¶¶ 4–5; Doc. 118, p. 2; Doc. 143, p. 21.) Regardless, the Court refers to the Inventor as the owner of the IP because that is the only role it plays in this dispute.

[2] The MPA is governed by Florida law. (Doc. 63-1, pp. 9, 33.)

scope change orders and scheduling. (*See, e.g.*, Doc. 141-13.) Universal complained the Designer took too long on designs, delaying the project, while the Designer countered that Universal kept changing the scope of work without following the MPA's requirements, leaving the Designer scrambling to catch up. (Doc. 63, ¶ 55; Doc. 163, ¶¶ 9–11.)

In August 2015, with the parties' relationship at a breaking point, Universal sent the Designer a notice stating that it was going to terminate the relationship if the Designer did not cure certain alleged deficiencies. (*See* Doc. 141-13.) Per the MPA, Universal could terminate for cause if the Designer failed to perform; if Universal took this route, it had to give the Designer notice and five days to cure. (Doc. 63-1, p. 21.) Alternatively, the MPA also provides that Universal could terminate for convenience. (*Id.*) The Designer sent Universal a cure plan within five days, but Universal remained unsatisfied and terminated the MPA two months later. (Doc. 108-3, pp. 224:17–225:10; Doc. 141-18.) Universal then hired a third party to finish building the Attraction. (Doc. 63-4; Doc. 108-5, pp. 7:14–9:16.)

The termination gives rise to this dispute: Universal maintains it terminated for cause, while the Designer argues it was for convenience. (Doc. 110, ¶ 7; Doc. 143, p. 8, ¶ 7.) These options trigger different payment obligations under the MPA. (Doc. 63-1, pp. 21–22.) If Universal terminates for cause and hires someone else, Universal is not required to pay the Designer any amounts outstanding on a

work authorization (assuming it cost more to hire the third party than it would have cost for the Designer to perform). (*Id.* at 21.) But if Universal terminates for convenience, it must pay the Designer all amounts outstanding. (*Id.*)

So each sued the other. The Dynamic side sued first: the Designer brought claims against Universal for breach of contract, breach of good faith and fair dealing, and account stated,[3] while the Inventor sued Universal for breach of third-party beneficiary contractual rights and breach of good faith and fair dealing.[4] (Doc. 63, ¶¶ 185–209, 270–83.) Universal counterclaimed against the Designer for breach of contract and breach of good faith and fair dealing. (Doc. 162, ¶¶ 57–68.) Both sides now move for partial summary judgment and to exclude expert opinions. (Docs. 109–11, 118–20, 131, 132, 141, 143–45, 149, 153.) After a hearing (Doc. 183), the matter is ripe.

## STANDARDS

### I. Summary Judgment

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the evidence and

---

[3] Plaintiffs also sued for a permanent injunction, but the Court dismissed that Count with prejudice; nevertheless, Plaintiffs strangely included that Count in their amended pleading post-dismissal. It remains dismissed. (*See* Doc. 62; Doc. 63, ¶ 210.)

[4] Plaintiffs also sued the third party that completed the Attraction but later settled. (*See* Doc. 63, ¶¶ 220–69; Doc. 86.)

all reasonable inferences drawn from the evidence in the light most favorable to the non-movant. *Battle v. Bd. of Regents for Ga.*, 468 F.3d 755, 759 (11th Cir. 2006). On cross-motions, "[t]he Court must consider each motion separately, resolving all reasonable inferences against the party whose motion is under consideration." *Koehler v. Waypoint Res. Grp.*, No. 8:18-cv-2071, 2019 WL 5722117, at *1 (M.D. Fla. Nov. 5, 2019). Then the Court must decide whether there is "sufficient disagreement to require submission to a jury." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (cleaned up).

## II. *Daubert*

Expert testimony may be admitted only if: "(1) the expert is qualified to testify . . . ; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable . . . ; and (3) the testimony assists the trier of fact . . . ." *Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1194 (11th Cir. 2010) (cleaned up); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). The proponent of the expert must establish the opinion is admissible by a preponderance of the evidence. *See Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010).

## ANALYSIS

### I. Summary Judgment

#### A. The Inventor

As a threshold matter, Universal argues that the Inventor's claims are barred

5

in whole because the MPA expressly excludes third-party beneficiaries. (Doc. 110, p. 26.) The Court agrees.

Where a contract is clear and unambiguous, it "should be construed as written, and the court can give [it] no other meaning." *Khosrow Maleki, P.A. v. M.A. Hajianpour, M.D., P.A.*, 771 So. 2d 628, 631 (Fla. 4th DCA 2000). "The contracting parties' intent to benefit [a] third party must be *specific* and must be *clearly expressed* in the contract . . . ." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 982 (11th Cir. 2005) (applying Florida law). If the contract does not intend to benefit the third party, the party is merely "an incidental beneficiary and has no rights." *Id.*

Here, in a provision titled "Third Party Beneficiary," the MPA "confers certain rights, assignments, covenants and benefits (but no obligations) to the Protected Entities." (Doc. 63-1, p. 34.) "Protected Entities" are defined to include only *Universal* affiliates, not affiliates of the Designer. (*See id.* at 8.) The provision concludes: "[T]here are no third party beneficiaries to this Agreement." (*Id.* at 34.) So under a plain reading of the MPA, it expressly confers third-party beneficiary rights to Universal's affiliates and expressly excludes anyone else from claiming such rights. (*See id.*) The Inventor is neither a party[5] to the MPA nor is it an affiliate

---

[5] The Inventor tries to muddy the waters by pointing to another provision in the MPA defining "Third Party," which expressly excludes the Designer and its affiliates—meaning, the Inventor. (*See* Doc. 63-1, p. 6; Doc. 143, p. 21.) But the Third Party definition has no impact on the third party beneficiary provision, which does not reference the Third Party section at all and in fact does not use the capitalized form of "Third Party." (Doc. 63-1, p. 34.) So while the Inventor is not a Third Party, it is also not a third-party beneficiary with rights to enforce the MPA. So this

6

of Universal—so the third-party beneficiary provision plainly disclaims any rights to the Inventor. (*Id.* at 9, 36); *see, e.g.*, *Wolf v. Celebrity Cruises, Inc.*, 683 F. App'x 786, 798 (11th Cir. 2017) (stating that the contract did "not express an intent to benefit any third party—instead, it expressly state[d] the contrary"). This reading is further supported by the fact that the MPA in totality does not elsewhere confer any rights on the Inventor that would give the Inventor cause to sue under the contract to enforce them.[6] (*See* Doc. 63-1.) The Inventor was merely an "incidental beneficiary" to the MPA, not a third-party beneficiary with rights to sue. *See Bochese*, 405 F.3d at 981–82. So Universal is entitled to summary judgment on this issue, and the Inventor has no live claims moving forward.

With that threshold matter resolved, the Court turns to the disputes between Universal and the remaining Plaintiff, the Designer.

### B.    Notice

Neither side moves for summary judgment on the issue of breach—rightly so, as that is a fact issue for the jury. (*See* Docs. 110, 118); *See Homeward Real Est., Inc. v. Shoubaki*, 346 So. 3d 144, 148 (Fla. 2d DCA 2022). But the Designer argues that assuming it did breach, Universal wrongfully terminated the MPA by failing

---

argument is a nonstarter.

[6] While the MPA provides that the Designer "will cause" the Inventor to grant Universal a license to use the Inventor's IP where appropriate (Doc. 63-1, p. 51), this does not entitle the Inventor to sue either, and rather places obligations on the Designer—a signatory to the MPA.

to provide the requisite notice and opportunity for the Designer to cure. (Doc. 118, pp. 6–7.) The record belies this argument.

The interpretation of a contract is a matter of law for the Court. *Feaz v. Wells Fargo Bank, N.A.*, 745 F.2d 1098, 1104 (11th Cir. 2014) (applying Florida law). The sufficiency of legal notice pursuant to a contract is measured by "substantial compliance." *Megacenter US LLC v. Goodman Doral 88th Ct. LLC*, 273 So. 3d 1078, 1084 (Fla. 3d DCA 2019). Strict compliance with the technical requirements of a contractual notice provision is unnecessary if the other side receives actual notice. *See id.*

In the event of the Designer's breach, in order to terminate for cause, the MPA requires Universal to give the Designer written notice of the breach and allow five days to cure the deficiencies. (Doc. 63-1, p. 21.) The MPA provides certain technical requirements for written notices like including in the subject line: "Written Notice" in bold type, the date of the MPA, information about the work authorization order, paragraph number of the MPA or work authorization the notice concerns, and a description of the issue. (*Id.* at 10.)

Here, there is no dispute that Universal sent the Designer a notice of noncompliance on August 19, 2015 ("Notice"), citing the Designer's purported material breaches and requiring the Designer to provide a written plan to cure within five days. (*See* Doc. 141-13.) There is also no dispute that the Designer

received that notice and treated it as effective, providing a cure plan by the five-day deadline. (Doc. 108-1, pp. 201:2–6, 203:16–17.) And there is no dispute that Universal terminated two months later. (Doc. 63-4.)

The Designer's argument is that the Notice omitted several technical requirements listed in the MPA for written notices like not including "Written Notice" in bold type. (Doc. 118, p. 6.) True, the Notice omits certain technicalities. (*See* Doc. 141-13.) But the Notice on its face alerted the Designer that it was in breach, was at risk of termination, and had five days to cure—so it substantially complied with the technical requirements of the MPA and gave actual notice to the Designer. (Doc. 63-1, p. 21; Doc. 141-13);[7] *see Megacenter*, 273 So. 3d at 1084. So Universal's Notice complied with the MPA. (Docs. 63-4, 141-13.) Even if further analysis were needed, which it is not, the effectiveness of the Notice is further shown by the fact that the Designer responded within five days of receipt—demonstrating actual notice and exercising its right to (attempt to) cure. (Doc. 108-1, pp. 201:2–6, 203:16–17); *see Megacenter*, 273 So. 3d at 1084.

So Universal provided the Designer with the notice and opportunity to cure required by the MPA. So the Designer's motion is due to be denied on this issue. If the jury determines that the Designer was in breach, Universal's notice and

---

[7] Specifically, the subject line of the Notice read "Non-Compliance Notice" in bold type, included the date of the MPA and the work authorization number, and the body of the Notice included a summary of the alleged breaches. (Doc. 414-13.)

subsequent termination for cause will be effective.

### C. License

Universal argues that regardless of who breached, the MPA granted Universal a perpetual license to use the Inventor's IP at the outset of the parties' relationship, so no further payments were required to secure that license. (Doc. 110, pp. 11–12.) But Universal's interpretation is not supported by the MPA.

Again, contract interpretation is a question of law, while breach is a question of fact. *See Homeward*, 346 So. 3d at 148; *Access Ins. Planners, Inc. v. Gee*, 175 So. 3d 921, 924 (Fla. 4th DCA 2015).

Here, the MPA provides the Designer will cause the Inventor to grant Universal a license to use the IP "without any cost *beyond the payments otherwise required* by [the MPA] or by any related *Work Authorization*." (Doc. 63-1, p. 51 (emphasis added).) Under the plain language of this provision, *once* Universal is granted a license to use a portion of the IP, that license is irrevocable—but the question remains, has Universal been granted a license for the IP for which there are outstanding payments due on a work authorization order? Universal's misreading would grant it a license regardless of whether it paid what it was required to pay—rendering the last clause of the sentence superfluous. *See PNC Bank, N.A. v. Progressive Emp. Servs. II*, 55 So. 3d 655, 658 (Fla. 4th DCA 2011) ("[An] interpretation which gives a reasonable meaning to all provisions of a contract is

preferred to one which leaves a part useless or inexplicable." (cleaned up)). The full provision must be given effect: Universal has a license to use the IP *so long as* it satisfies all required payments. (Doc. 63-1, p. 21.) But whether Universal is required to pay on the outstanding work authorization turns on a factual dispute: whether the Designer breached. If the Designer breached, then Universal was permitted to terminate for cause—maintaining the IP license without[8] further payment; but if the Designer did not breach, then Universal's termination was for convenience—meaning Universal must pay on that outstanding authorization and the license to use that portion of the IP. (Doc. 63-1, p. 51; Doc. 110, pp. 11–12; Doc. 118, pp. 11–12.) Breach is a fact-intensive inquiry for the jury so summary judgment on whether Universal has a license is inappropriate. *See Ice Portal, Inc. v. VFM Leonardo, Inc.*, No. 09-60230, 2010 WL 107840, at *1 (S.D. Fla. Jan. 7, 2010). So Universal's motion is due to be denied on this point. The jury's determination of the breach issue will be resolve whether Universal terminated for cause and was granted the license.

### D. Damages

The parties pose one more question in the event of a Universal breach.[9] The

---

[8] The provision provides for no further payment if Universal paid more for the third party to complete the attraction than it would have paid the Designer. (Doc. 63-1, p. 21.) The amount Universal paid the third party is not before the Court and the cost differential is disputed (*see* Doc. 141, p. 17), so this question remains for the jury in the event that it determines the Designer breached. (*See* Doc. 110, p. 7, ¶ 7; Doc. 143, p. 7, ¶ 7.)

[9] Many of the Designer's allegations of Universal's ongoing breaches (such as changes to

Designer claims it may recover reasonable royalties and lost profits. (Doc. 63, ¶ 183.) Universal says otherwise, arguing that even if it breached, these damages are not recoverable under the MPA as a matter of law. (Doc. 109, p. 17; Doc. 149, p. 2.) The Court agrees with Universal.

In a breach of contract action, "the purpose of compensation is to restore the injured party to the condition which he would have been in had the contract been performed." *Campbell v. Rawls*, 381 So. 2d 744, 746 (Fla. 1st DCA 1980). The aggrieved party cannot receive a windfall—that is, "more than it bargained for." *24 Hr Air Serv., Inc. v. Hosanna Cmty. Baptist Church, Inc.*, 322 So. 3d 709, 713 (Fla. 3d DCA 2021) (cleaned up). Consequential damages are those that proximately result from the breach and "were reasonably foreseeable by the breaching party at the time of contracting." *Keystone Airpark Auth. v. Pipeline Contractors, Inc.*, 266 So. 3d 1219, 1223 (Fla. 1st DCA 2019).[10] "Florida courts allow parties to limit remedies contractually, and if such provisions are made, a court may not award greater

---

work authorizations that did not comply with the MPA) do not appear actionable, as the Designer's continued performance may have waived any argument that these breaches were material. *See MDS (Canada) Inc. v. Rad Source Techs., Inc.*, 720 F.3d 833, 852 (11th Cir. 2013) (applying Florida law) (stating that "a material breach excuses a party from performance of the contract, although the injured party may waive the breach"). The only actionable breach alleged appears to be Universal's purported wrongful termination. (Doc. 63, ¶¶ 139–49.) But neither party raised this issue for disposition, so the Court does not decide it at this juncture.

[10] If the Designer had sought to void the MPA and to be placed in the position it was in before entering it, damages are limited to the expenses it incurred before Universal breached and expenditures made in preparation for its performance. *See Beefy Trail, Inc. v. Beefy King Int'l, Inc.*, 267 So. 2d 853, 856 (Fla. 4th DCA 1972). So while the Designer's expenses may encompass unpaid invoices, it made no argument, and provided no evidence, to support a recovery of reasonable royalties or lost profits under this theory either.

compensatory damages." *TYR Tactical, LLC v. Protective Prod. Enterprises, LLC*, No. 15-cv-61741, 2016 WL 10647315, at *6 (S.D. Fla. Oct. 13, 2016), *aff'd,* 711 F. App'x 968 (11th Cir. 2017).

Here, damages under the contract are expressly limited to recovering any amount outstanding in work authorization orders.[11] (*See* Doc. 63-1, p. 22.) The MPA expressly precludes consequential damages. (*See id.* at 34 (including lost profits).) Because the contract limits damages to amounts owed on work authorizations and nothing else, allowing additional royalties or lost profits would serve as a windfall, putting the Designer in a better position than had Universal not wrongfully terminated. *See TYR Tactical*, 2016 WL 10647315, at *6. *See generally Burger King Corp. v. Mason*, 710 F.2d 1480, 1494 (11th Cir. 1983) (discussing the difference between IP remedies and contract remedies in Florida). As the MPA does not entitle the Designer to receive royalties or lost profits,[12] the Designer cannot recover them.[13] So Universal is entitled to summary judgment on this point.

---

[11] If Universal terminates for cause, the Designer would only be entitled to recover the difference, if any, of what it would have been entitled to receive and what a third party charged Universal to perform. (Doc. 63-1, p. 21.) If Universal terminates for convenience (or wrongfully terminates for cause), Universal must pay the Designer for completed work authorizations. (*Id.* at 4, 22 (defining "Compensation" as amounts due under work authorizations).)

[12] The Designer also moved for summary judgment on ownership of the IP and Universal's ongoing use (*see* Doc. 118, pp. 20–21), but the Court is skeptical that these remain live issues in this case given its finding that the Designer is not entitled to royalties or lost profits. Regardless, the Designer's bare-boned motion and arguments fail to address how licensing the IP affects ownership of the final work product, so it failed to meet its burden under Rule 56. (*See* Doc. 118.)

[13] The Designer relies on *Biodynamic Technologies, Inc. v. Chattanooga Corp.*, 658 F. Supp. 266, 268, 269 (S.D. Fla. 1987), in support of its assertion that even though the MPA does not provide

## II. *Daubert*

The Court now turns to the *Daubert* motions.

Since the Designer may not recover royalties or lost profits, expert opinions on IP-related issues are irrelevant. So the Designer's motions to exclude the IP-related opinions of Justin V. Lewis[14] and James L. Glancey are due to be granted. (*See* Docs. 119, 120.) And Universal's motions to exclude Dr. Hank Fishkind's and Steven Becker's opinions are due to be granted in part on those same grounds. (Docs. 109, 111.) So the Court need only address Universal's arguments to exclude Fishkind's and Becker's non-IP opinions.

### A. Fishkind

First, Universal argues that Fishkind's opinions on unpaid invoices and interest should be excluded as unreliable and unhelpful. (Doc. 109, pp. 21–22.) The Court agrees.

"An expert may not present testimony that merely 'parrots' the opinions of others, without providing an independent evaluation of the evidence." *Rebotix Repair, LLC v. Intuitive Surgical, Inc.*, No. 8:20-cv-2274, 2022 WL 3226794, at *4 (M.D. Fla. Aug. 10, 2022) (cleaned up); *see MasForce Eur., BVBA v. MEC3 Co.*, No. 8:11-cv-

---

for reasonable royalties, it may still recover them. (Doc. 143, p. 17.) But *Biodynamic* is inapplicable here, as that case applies Tennessee law and that plaintiff actually pled and proved a trade secret misappropriation claim. *See Biodynamic*, 658 F. Supp. at 269.

[14] The rest of Lewis's expert opinions on contract-related damages may proceed as unchallenged. (*See* Doc. 135-6.)

1814, 2013 WL 12156469, at *5 (M.D. Fla. Dec. 4, 2013) (stating that expert testimony is improper when it has "no methodology and simply conveys information provided to the expert by an interested party"). And expert testimony that consists of a "simple arithmetic calculation is not beyond the understanding of the average lay person and therefore would not help the trier of fact." *LSQ Funding Grp., L.C. v. EDS Field Servs.*, 879 F. Supp. 2d 1320, 1336 (M.D. Fla. 2012).

Here, there are several issues with Fishkind's opinions. First, while opining on unpaid invoices, Fishkind merely assumed that all of the invoices the Designer provided to him were unpaid, rather than independently investigating whether they were actually outstanding, which is improper. (Doc. 109-3, pp. 61:25–62:19); s*ee MasForce*, 2013 WL 12156469, at *5. Second, Fishkind used a 6% interest rate to calculate the total amount due because that was what the Complaint alleged—but neither the Designer nor Fishkind identify any methodology or basis for this interest rate.[15] (Doc. 109-3, p. 53:15–22; *see* Doc. 145, pp. 22–23); *Hendrix*, 609 F.3d at 1194. And the MPA is silent on interest rate. (*See* Doc. 63-1.) Third, the Designer failed to show how Fishkind's arithmetic calculation of adding up unpaid invoices and applying an interest rate is specialized knowledge that would help the jury.[16]

---

[15] While Fishkind testified that he believed the "judicial interest" rate in Florida was close to 6%, he offered no basis for this belief. (*See* Doc. 109-3, p. 54:1–3.) Even if he had, it is the Designer's burden to show that its proffered expert's methodology is sufficiently reliable, and it made no mention of this purported rate in its response. (*See* Doc. 145, pp. 21–22.)

[16] The Designer contends that Fishkind's testimony is necessary to convert the MPA's euros to dollars, but this is an improper ground for admitting expert opinions. *See MasForce*,

*See LSQ*, 879 F. Supp. 2d at 1336. So the Designer fails to meet its burden of establishing that Fishkind's opinions are admissible, and Universal's motion to exclude is due to be granted as to these opinions. *See Kilpatrick*, 613 F.3d at 1335. Fishkind will not be permitted to testify.

### B. Becker

Next, Universal moves to exclude Becker's opinion that Universal, without approval, altered IP title blocks that described ownership and confidentiality on drawings. (Doc. 111, p. 24; Doc. 126, p. 34.) Universal seeks to exclude this opinion as unhelpful because it is conclusory and devoid of technical analysis. (Doc. 111, pp. 23–24.) The Court agrees. Expert testimony is generally unhelpful "when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1111 (11th Cir. 2005). Here, the Designer only states in a conclusory fashion that the jury "needs assistance to determine technical issues," without explaining how this opinion provides that assistance. (Doc. 144, p. 25.) So the Designer fails to meet its burden to show the admissibility of this opinion. *See Kilpatrick*, 613 F.3d at 1335. Becker will not be permitted to testify either.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED**:

---

2013 WL 12156469, at *5.

1. Universal's motion for summary judgment (Doc. 110) is **GRANTED IN PART AND DENIED IN PART**:

    a. The motion is **GRANTED** in that the Designer may not recover reasonable royalties or lost profits.

    b. The motion is also **GRANTED** in that the Inventor is not a third-party beneficiary of the MPA as a matter of law and thus may not bring the claims alleged. The Court will enter judgment on Counts X and XI (Doc. 63, ¶¶ 270–82) in favor of Universal and against the Inventor when the remaining claims are resolved. The Inventor no longer has any live claims in this case.

    c. In all other respects, the motion is **DENIED**.

2. The Designer's motion for partial summary judgment (Doc. 118) is **DENIED**. Universal provided the Designer with the requisite notice and an opportunity to cure as a matter of law.

3. Universal's motion to exclude Fishkind's opinions (Doc. 109) is **GRANTED**. Fishkind may not testify.

4. Universal's motion to exclude Becker's opinions (Doc. 111) is **GRANTED**. Becker may not testify.

5. The Designer's motion to exclude Glancey's opinions (Doc. 119) is

17

        **GRANTED**. Glancey may not testify.

6.      The Designer's motion to exclude Lewis's opinions (Doc. 120) is **GRANTED**. Lewis may testify only about contract-related damages such as unpaid invoices and amounts due.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on March 13, 2023.

ROY B. DALTON JR.
United States District Judge